UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TIMOTHY HANNER,

    Plaintiff,

v.                            Case No:  2:22-cv-810-JES-KCD

JAMES THOMPSON,[1] C. GARROW,
and E. SWAT,

    Defendants.
_____/

**OPINION AND ORDER**

Plaintiff Timothy Hanner, a prisoner of the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint generally alleging that the deliberate indifference of two corrections officers and a mental health provider at Charlotte Correctional Institution led to his suicide attempt. (Doc. 1). The Court now considers a motion to dismiss filed by Defendants Garrow and Swat. (Doc. 27). Hanner responded to the motion (Doc. 29), and it is ripe for review.

After carefully considering the pleadings, the Court grants the defendants' motion to dismiss. Hanner may file an amended complaint if he wishes to proceed in this action.

---

[1] Hanner has identified this defendant as "J. Thomson." (Doc. 1 at 3). The defendants note that the correct name of this defendant is Dr. James Thompson. (Doc. 27 at 1).

## I. Pleadings

### A. Complaint

Hanner asserts the following facts in his complaint:[2] On May 5, 2022, Hanner awoke after experiencing a night of severe psychological distress and nightmares. (Doc. 1 at 5, ¶ 1). At 10:25 a.m., he informed Officer Colls of his psychological emergency and suicidal thoughts. (Id. ¶ 3). At 11:00, Officer Colls pulled Hanner from his cell to speak with a mental health counselor, Defendant Thompson. (Id. ¶ 5). Hanner spoke with Defendant Thompson for 20 to 30 minutes. (Id. at 5-6, ¶ 5). He informed Defendant Thompson that he wanted to kill himself. (Id. ¶ 6). Defendant Thompson left the room, spoke to an officer, and walked out of the wing. (Id. ¶ 7). Officer Colls then placed Hanner in the shower and took all of his clothing except his boxers. (Id. ¶ 8).

At about 12:00 p.m., two different officers took Hanner from the shower, placed him in hand restraints, and put him back in his cell without first doing a cell search. (Doc. 1 at 6, ¶ 9). At approximately 1:16 p.m., Defendant Officer Garrow conducted a security check. (Id. ¶ 11). Hanner attempted to tell Defendant Garrow that he had a "psychological emergency causing suicidal thoughts," but the officer "just kept walking." (Id. at 7, ¶ 11).

---

[2] At this stage of litigation, Hanner's factual allegations (but not his legal conclusions) are accepted as true.

Defendant Garrow conducted another security check at 2:01 p.m., and Hanner asked him to summon help for his mental health issues and suicidal thoughts. (Id. ¶ 12). Defendant Garrow told him that "he has other things to tend to besides [Hanner's] emergency," and left the wing. (Id.)

At some unspecified time, Defendant Swat conducted a daily inspection with a lieutenant. (Doc. 1 at 7, ¶ 13). Hanner stopped him to declare a psychological emergency due to suicidal thoughts, but Defendant Swat "did not follow policy or procedures." (Id.)

At about 2:54 p.m., Officer Colls approached Hanner's cell, and Hanner's cellmate told him that he (Hanner) was trying to cut himself with a razor. (Doc. 1 at 7, ¶ 15). Officer Colls left the wing. (Id.) At 3:00 p.m., Hanner's cellmate began kicking the door to get help because Hanner was trying to cut the veins in his arm. (Id. ¶ 15). Security cuffed Hanner and placed him in the shower until medical and mental health services arrived. (Id. at 8, ¶ 16). The injury on Hanner's left arm was cleaned, Hanner was re-evaluated by mental health, and he was placed on S.H.O.S. status. (Id. ¶ 17).

Hanner lists two separate claims in his complaint (Count One and Count Two). He asserts that the defendants were deliberately indifferent to a risk of serious harm when they: (1) failed to protect Hanner from his self-inflicted harm; and (2) failed to contact the mental health department after Hanner alerted them to

3

his suicidal thoughts. (Doc. 1 at 8-9).³ He also asserts that Defendant Thompson should have reported Hanner's suicidal thoughts to a psychiatrist. (Id. at 9, ¶ 13). Hanner seeks both compensatory and punitive damages. (Id. at 11).

### B. Motion to Dismiss

Defendants Garrow and Swat have filed a motion to dismiss. (Doc. 27). They argue that Hanner provides only a "threadbare description of the event" and "does not provide details of the interactions with Defendants Swat and Garrow." (Id. at 5). They assert that Hanner has not stated a claim against either officer, and that the scant facts alleged are "insufficient to provide proof of [a] causal connection[.]" (Id. at 5). In sum, they argue:

> Here, while difficult to infer the entirety of the event, the Plaintiff's Complaint seems to take issue with the medical treatment or assessment that he received from Dr. Thompson. As it relates to Defendants Garrow and Swat, there are no facts to support that either Defendant had an independent knowledge of Plaintiff's suicidal tendencies or that either had a reason to disagree with the already completed medical assessment by a medical professional, if the Defendants were aware. As the Complaint is factually threadbare for Defendants Swat and Garrow, it is difficult to discern if there was any additional knowledge of Plaintiff's mental health history or recent treatment. On the face of the Complaint, Plaintiff does not provide factual information to support the actions of Defendants Swat and

---

³ The Eleventh Circuit has held that "[a]cting with deliberate indifference to a serious medical need is a separate claim from acting with deliberate indifference to a known risk of suicide." Jackson v. West, 787 F.3d 1345, 1358 (11th Cir. 2015).

4

> Garrow being deliberately indifferent to Plaintiff's previously addressed medical needs. Accordingly, the Complaint should be dismissed.

(Doc. 27 at 8). The defendants also argue that—to the extent Hanner raises official-capacity claims—Defendants Swat and Garrow are immune from suit. (Id. at 8–9). Finally, they argue that the officers are entitled to qualified immunity on Hanner's individual-capacity claims. (Id. at 9–10).

In his response to the motion to dismiss, Hanner repeats his factual allegations and generally denies that the defendants are entitled to dismissal of this action. (Doc. 29).

## II. Standards of Review

### A. Motion to Dismiss

In evaluating a motion to dismiss, this Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court has explained that factual allegations must be more than speculative:

5

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Twombly, set forth a two-pronged approach to evaluate motions to dismiss. First, a reviewing court determines whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, it determines whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678-79. Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

    **B.** **Deliberate Indifference (Known Risk of Suicide)**

To state a claim for deliberate indifference to a known risk of suicide, Hanner must plausibly allege that the defendants had: "(1) subjective knowledge of a risk of serious harm; [and] (2)

6

disregard[ed] that risk; (3) by conduct that is more than mere negligence." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Co., Fla., 402 F.3d 1092 (11th Cir. 2005) (internal quotation omitted). The Cook court explained:

> Under this Circuit's precedent, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard "a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." Id. at 986 (emphasis in original)(quoting Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990)). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Id. (quoting [Tittle v. Jefferson Cty. Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994))].

Cook, 402 F.3d at 1115 (third alteration in original, emphasis in original). Importantly, "[a]bsent [a defendant's] knowledge of a detainee's suicidal tendencies, . . . [his] failure to prevent suicide has never been held to constitute deliberate indifference." Popham, 908 F.2d at 1564 (ellipsis in original). To be deliberately indifferent to a "strong likelihood" that the prisoner may commit suicide, "the official must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide." Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008). Thus, the court must assess the claims against each individual Defendant "separately and on the basis of what that

person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008).

### C. Deliberate Indifference (Serious Medical Need)

To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a prisoner must allege plausible facts showing that: "(1) he had a serious medical need; (2) the defendants acted with deliberate indifference to that need; and (3) the defendants' indifference caused his injury." DiPietro v. Medical Staff at Fulton Cnty. Jail, 805 F. App'x 793, 795 (11th Cir. 2020). With respect to the second element, Hanner must allege that the defendant: (1) had subjective knowledge of a risk of serious harm; and (2) disregarded that risk; by (3) displaying conduct that went beyond gross negligence. Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010).

### III. Discussion

As an initial matter, Hanner does not state whether he sues the defendants in their individual or official capacities. Official-capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Thus, Hanner's official-capacity claims against the defendants—all of whom are employed by the Florida Department of Corrections ("FDOC")—are essentially claims against the FDOC.

The Eleventh Amendment generally bars suits for damages by an individual against a state, its agencies, and its employees, unless Congress has abrogated the state's sovereign immunity or the state has consented to suit. Schultz v. Alabama, 42 F.4th 1298, 1314 (11th Cir. 2022). Congress has not abrogated the states' sovereign immunity in damages actions under section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67-68 (1989). Because the FDOC is entitled to Eleventh Amendment immunity, Hanner's official-capacity claims are dismissed. See Leonard v. Fla. Dep't of Corr., 232 F. App'x 892, 894 (11th Cir. 2007) ("The Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment." (citing Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989))); 28 U.S.C. § 1915(e)(2)(B)(ii). Therefore, the Court treats the claims raised in Hanner's complaint as individual-capacity claims.

### A. Hanner has not stated a plausible claim against Defendant Swat.

Hanner mentions Defendant Swat only once in the fact section of his complaint. There, he asserts the following:

> Sgt. Swat conduct daily inspection with a [Lieutenant] which I stop him [and declare] psychological emergency due to suicidal thoughts which he also did not follow policy or procedures. Sgt. Swat action makes him liable to my physical injuries.

(Doc. 1 at 7, ¶ 13). Although a complaint need only contain, "a short and plain statement of the claim showing that the pleader is

9

entitled to relief," Fed. R. Civ. P. 8(a)(2), the scant allegations here do not state a deliberate indifference claim against Defendant Swat. Hanner provides a chronological timetable of what occurred between 10:25 a.m., when he told Officer Colls of his suicidal thoughts, and 3:00 p.m. when he attempted to cut himself. (Doc. 1 at 5-7). However, he does not say when he spoke to Defendant Swat, what he said to him, or what Defendant Swat actually said or did in response. And while Hanner states that Defendant Swat "did not follow policy or procedures," he does not identify the procedures Defendant Swat allegedly <u>should</u> have followed or alleged any of the elements of a deliberate indifference claim. Despite making the vague allegation that he alerted this defendant to "suicidal thoughts," the complaint contains no factual allegations from which to draw an inference that Defendant Swat even heard him, much less knew of a "strong likelihood" that Hanner would attempt suicide in the near future.[4]

Therefore, Hanner has alleged only the "sheer possibility" of unlawful activity by Defendant Swat. <u>Iqbal</u>, 556 U.S. at 678. But

---

[4] And as to the medical deliberate indifference count against Defendants Swat and Garrow, it appears from the complaint that Hanner <u>did</u> receive mental health counseling from Defendant Thompson earlier on the same day and was removed from his cell for a period of time. That Defendant Thompson may have underestimated the seriousness of Hanner's medical emergency is a claim for, at most, medical malpractice against Defendant Thompson. Hanner has not alleged facts showing that the alleged lack of treatment can be attributed to Defendants Swat or Garrow.

10

to survive a motion to dismiss, he must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Rather, the allegations in Hanner's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted). Here, Hanner's conclusory allegations are the kind of "naked assertions devoid of further factual enhancement" that are insufficient to avoid dismissal under Iqbal. Id. (quotations and alteration omitted); see also Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6)). The claims against Defendant Swat are, therefore, dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

**B. Hanner has not stated a plausible claim against Defendant Garrow.**

Hanner's factual allegations against Defendant Garrow are only slightly more robust than those against Defendant Swat. Hanner asserts that Defendant Garrow conducted a security check at around 1:16 p.m., and that he (Hanner) "tried" to stop him to tell him about a psychological emergency, but the Defendant "just kept walking, delaying and denying help to a serious need." (Doc. 1 at 6-7, ¶ 11). He asserts that Officer Garrow conducted another

11

security check 45 minutes later, and Hanner told him to get help for his "mental health issues of suicide," but Defendant Garrow told him that he had "other things to tend to."  (Id. at 7, ¶ 12).

While Hanner asserts that he told (or tried to tell) Officer Garrow of his mental health issues, he does not state what he actually said to Defendant Garrow or explain how the words (if any) exchanged between the two was sufficient to alert Defendant Garrow to a "strong likelihood" that Hanner would attempt suicide in the near future.  In other words, Hanner has not stated a plausible deliberate indifference claim against Defendant Garrow for his failure to stop his suicide attempt, and the claims against him are dismissed.  Fed. R. Civ. P. 12(b)(6).

## C. Hanner has not stated a plausible claim against Defendant Thompson.[5]

Hanner asserts that, after he told Officer Colls of his psychological emergency, he was "pulled" to speak with mental health counselor, Defendant Thompson.  (Doc. 1 at 5-6, ¶¶ 4-5).  He said that he spoke with Defendant Thompson for 20 to 30 minutes

---

[5] Defendant Thompson has not yet been served with process, and he has not filed a motion to dismiss.  However, the Court briefly considers the allegations against Defendant Thompson to determine whether Hanner has stated a cognizable claim.  Under 28 U.S.C. § 1915A, a court is required to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  The reviewing court must dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"  Id. § 1915A(b)(1).

and "express[ed] to him of my suicide thoughts and the cause of those thoughts and I want help so I do not act upon the thoughts. I told him I wanna kill myself." (Id. at 6, ¶ 6). He states that Defendant Thompson spoke to an officer, and Hanner was then placed in the shower wearing only boxers. (Id. ¶ 8).

From Hanner's allegations, it is clear that Defendant Thompson did not ignore Hanner's mental health issues. He spoke with Hanner for 20-30 minutes and then had an officer remove Hanner from his cell and segregate him in the shower. Hanner does not allege that Defendant Thompson ordered, or was otherwise responsible for, his placement back into the cell without first searching it for harmful objects. Nor does Hanner explain why or how Defendant Thompson would have known that there was a "strong likelihood" Hanner would attempt suicide in the near future after their counseling session. And while the Court could certainly infer a possibility that Defendant Thompson ignored the strong likelihood of Hanner's actions by conduct that was more than merely negligent, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Hanner fares no better on his medical deliberate indifference claim against this defendant. Notably, not "every claim by a

13

prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). And courts are reluctant to find deliberate indifference where, as here, medical treatment was actually provided to a prisoner. <u>See</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) ("It is . . . true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation.") Even if Defendant Thompson <u>should</u> <u>have</u> recognized the seriousness of Hanner's condition, Hanner has not alleged that he did so, and on the facts alleged in Hanner's complaint, this defendant's failure to provide additional treatment was, at most a matter of medical negligence.

## IV. Conclusion

The Court finds that the facts alleged in Hanner's complaint do not state a plausible claim against any named defendant. Therefore, the defendants' motion to dismiss is granted. Fed. R. Civ. P. 12(b)(6). Defendant Thompson is dismissed from this action under 28 U.S.C. § 1915A(b)(1).[6]

Hanner may file an amended complaint within **TWENTY-ONE (21) DAYS** that complies with this Order by stating a legally sufficient

---

[6] Because the complaint is dismissed in its entirety for failure to state a claim on which relief can be granted, the Court will not address the defendants' argument that they are entitled to qualified immunity. If Hanner files an amended complaint, the defendants can argue entitlement to qualified immunity in another motion to dismiss or in a motion for summary judgment.

and adequately pleaded basis for liability. If Hanner does not file an amended complaint within the time allotted, or explain his inability to do so, this case will be dismissed without further notice.

Accordingly, it is

**ORDERED**:

1. The Clerk is **DIRECTED** to correct the spelling of Defendant James Thompson's name in CM/ECF.

2. The motion to dismiss filed by Defendants Swat and Garrow (Doc. 27) is **GRANTED** and the claims against these defendants are dismissed for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6).

3. The claims against Defendant Thompson are dismissed under 28 U.S.C. § 1915A(ii).

4. Hanner may file an amended complaint within **TWENTY-ONE (21) DAYS** from the date on this Order.

**DONE AND ORDERED** in Fort Myers, Florida on this 26th day of January 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-2
Copies: Timothy Hanner, Counsel of Record