UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TIMOTHY HANNER,

            Plaintiff,

v.                                    Case No: 2:22-cv-810-JES-KCD

JAMES THOMPSON, C. GARROW,
and E. SWAT,

            Defendants.
_____/

<u>**OPINION AND ORDER**</u>

Plaintiff Timothy Hanner, a prisoner of the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint generally alleging that two corrections officers and a mental health provider at Charlotte Correctional Institution were deliberately indifferent to his mental health crisis and threats of suicide. (Doc. 1). The Court now considers the second motion to dismiss filed by Defendants Garrow and Swat. (Doc. 37). Hanner responded to the motion (Doc. 39), and it is ripe for review.

After carefully considering the pleadings, the Court grants the defendants' motion to dismiss. Because the Court has already provided Hanner an opportunity to amend—along with a detailed order explaining the deficiencies of his first complaint—the dismissal is without further leave to amend.

## I.   Background and Pleadings

Hanner initiated this action on December 21, 2022, by filing a *pro se* 42 U.S.C. § 1983 complaint against Defendants J. Thompson (mental health counselor), Officer C. Garrow, and Sergeant E. Swat. (Doc. 1).  On January 26, 2024, the Court granted the defendants' motion to dismiss Hanner's first complaint for failure to state a claim on which relief could be granted.  (Doc. 32).  In a detailed order, the Court explained the complaint's deficiencies and instructed Hanner to file an amended complaint correcting these deficiencies if he wished to proceed.  (Id.)  While Hanner did file an amended complaint (Doc. 35), the factual allegations are essentially identical to those alleged in the original complaint.

### A.   Amended Complaint.

The relevant facts in the amended complaint are taken as true at this stage of litigation, and are as follows:  On May 5, 2022, Hanner awoke after experiencing a night of severe psychological distress and nightmares.  (Doc. 35 at 6, ¶ 1).  At 10:25 a.m., he informed Officer Colls of his psychological emergency and suicidal thoughts.  (Id. ¶ 3).  At 11:00, Officer Colls pulled Hanner from his cell to speak with a mental health counselor, Defendant Thompson.  (Id. ¶¶ 5, 6).  Hanner spoke with Defendant Thompson for 20 to 30 minutes.  (Id. at 5-6, ¶ 5).  He informed Defendant Thompson of his suicidal thoughts and told him that he wanted to kill himself.  (Id. ¶ 6).  After 20 to 30 minutes, Defendant Thompson left the room.  (Id. ¶ 8).  Officer Colls then placed

Hanner in the shower and took all of his clothing except his boxers. (Id. ¶ 9).

At about 12:00 p.m., two different officers took Hanner from the shower, placed him in hand restraints, and put him back in his cell without first doing a cell search. (Doc. 1 at 6, ¶ 10). At approximately 1:16 p.m., Defendant Officer Garrow conducted a security check. (Id. ¶ 12). Hanner attempted to tell Defendant Garrow that he had a "psychological emergency causing suicidal thoughts," but the officer "just kept walking." (Id. at 7, ¶ 12). Defendant Garrow conducted another security check at 2:01 p.m., and Hanner asked him to summon help for his mental health issues and suicidal thoughts. (Id. ¶ 14). Defendant Garrow told him that "he has other things to tend to besides [Hanner's] emergency," and left the wing. (Id.)

Between 2:00 and 2:30, Defendant Swat conducted a daily inspection with a lieutenant. (Doc. 1 at 8, ¶ 16). Hanner stopped him to declare a psychological emergency and showed him a razor. (Id.) Defendant Swat just walked away. (Id. ¶ 18).

At about 2:54 p.m., Officer Colls approached Hanner's cell, and Hanner's cellmate told him that he (Hanner) had cut himself with a razor. (Doc. 1 at 8, ¶ 20). Officer Colls left the wing. (Id.) At 3:00 p.m., Hanner's cellmate began kicking the door to get help because Hanner was trying to cut the veins in his arm. (Id. ¶ 21). Security cuffed Hanner and placed him in the shower until medical and mental health services arrived. (Id. at 9, ¶

3

22).  The injury on Hanner's left arm was cleaned, Hanner was re-evaluated by mental health, and he was placed on S.H.O.S. status. (Id. ¶ 23).

Hanner asserts that the defendants were deliberately indifferent to a known risk of serious harm when they: (1) failed to protect Hanner from his self-inflicted harm; and (2) failed to contact the mental health department after Hanner alerted them to his suicidal thoughts.  (Doc. 35 at 9-10).  He also asserts that Defendant Dr. James Thompson was deliberately indifferent when he did not report Hanner's suicidal thoughts to a psychiatrist.  (Id. at 10, ¶ 29).[1]

**B.   Motion to Dismiss**

Defendants Garrow and Swat have filed a motion to dismiss the amended complaint  (Doc. 37).  They argue that Hanner once again makes only a "threadbare description of the event" and provides insufficient details regarding his interactions with Defendants Swat and Garrow.  (Id. at 5).  In short, the defendants allege

---

[1] The Eleventh Circuit has held that "[a]cting with deliberate indifference to a serious medical need is a separate claim from acting with deliberate indifference to a known risk of suicide." Jackson v. West, 787 F.3d 1345, 1358 (11th Cir. 2015).  Hanner received mental health counseling from Defendant Thompson on the day of the incident and was removed from his cell for a period of time.  Hanner has not alleged facts showing that the alleged lack of further treatment can be attributed to Defendants Swat or Garrow.  Therefore, the Court construes the amended complaint as raising a claim for deliberate indifference to a known risk of suicide against the officers and claims for deliberate indifference to a serious medical need and a known risk of suicide against Defendant Thompson.

that "Plaintiff does not provide enough factual information to support the actions of Defendants Swat and Garrow being deliberately indifferent to Plaintiff's previously addressed medical needs." (Id. at 8).  The defendants also argue that they are entitled to qualified immunity.  (Id. at 9).

In his response to the motion to dismiss, Hanner repeats his factual allegations and generally denies that the defendants are entitled to dismissal of this action.  (Doc. 39).

## II.  Standards of Review

### A.   Motion to Dismiss

In evaluating a motion to dismiss, this Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff.  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").  However, the Supreme Court has explained that factual allegations must be more than speculative:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

> Factual allegations must be enough to raise a
> right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Twombly, set forth a two-pronged approach to evaluate motions to dismiss.  First, a reviewing court determines whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth.  Next, it determines whether the complaint's factual allegations state a claim for relief that is plausible on its face.  Iqbal, 556 U.S. at 678-79.  Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

**B.   Deliberate Indifference (Known Risk of Suicide)**

To state a claim for deliberate indifference to a known risk of suicide, Hanner must plausibly allege that the defendants had: "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] that risk; (3) by conduct that is more than mere negligence."  Cook ex rel. Estate of Tessier v. Sheriff of Monroe Co., Fla., 402 F.3d 1092 (11th Cir. 2005) (internal quotation omitted).  The Cook court explained:

> Under this Circuit's precedent, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard "a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." Id. at 986 (emphasis in original)(quoting Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990)). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Id. (quoting [Tittle v. Jefferson Cty. Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994))].

Cook, 402 F.3d at 1115 (third alteration in original, emphasis in original). Importantly, "[a]bsent [a defendant's] knowledge of a detainee's suicidal tendencies, . . . [his] failure to prevent suicide has never been held to constitute deliberate indifference." Popham, 908 F.2d at 1564 (ellipsis in original). To be deliberately indifferent to a "strong likelihood" that the prisoner may commit suicide, "the official must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide." Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008). Thus, the court must assess the claims against each individual Defendant "separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008).

## C. Deliberate Indifference (Serious Medical Need)

To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a prisoner must allege

plausible facts showing that: "(1) he had a serious medical need; (2) the defendants acted with deliberate indifference to that need; and (3) the defendants' indifference caused his injury." <u>DiPietro v. Medical Staff at Fulton Cnty. Jail</u>, 805 F. App'x 793, 795 (11th Cir. 2020).  With respect to the second element, Hanner must allege that the defendant:  (1) had subjective knowledge of a risk of serious harm; and (2) disregarded that risk; by (3) displaying conduct that went beyond gross negligence.  <u>Pourmoghani-Esfahani v. Gee</u>, 625 F.3d 1313, 1317 (11th Cir. 2010).

### III. Discussion

**A.  Hanner has not stated a plausible deliberate indifference claim against Defendant Garrow.**

As noted, the factual allegations against Defendant Garrow in Hanner's amended complaint are virtually identical to those alleged in the original complaint.  In its prior order dismissing the claims against Defendant Garrow, the Court explained:

> Hanner asserts that Defendant Garrow conducted a security check at around 1:16 p.m., and that he (Hanner) "tried" to stop him to tell him about a psychological emergency, but the Defendant "just kept walking, delaying and denying help to a serious need."  He asserts that Officer Garrow conducted another security check 45 minutes later, and Hanner told him to get help for his "mental health issues of suicide," but Defendant Garrow told him that he had "other things to tend to."
>
> While Hanner asserts that he told (or tried to tell) Officer Garrow of his mental health issues, he does not state what he actually said to Defendant Garrow or explain how the words (if any) exchanged between the two was sufficient to alert Defendant Garrow to a

> "strong likelihood" that Hanner would attempt
> suicide in the near future.  In other words,
> Hanner has not stated a plausible deliberate
> indifference claim against Defendant Garrow
> for his failure to stop his suicide attempt,
> and the claims against him are dismissed.
> Fed. R. Civ. P. 12(b)(6).

(Doc. 32 at 11–12 (internal citations to the record omitted)).

Despite the Court's detailed explanation of why Hanner did not state a plausible claim against Defendant Garrow, Hanner <u>still</u> does not elaborate on his factual assertions against Defendant Garrow or explain how the words (if any) exchanged between the two were sufficient to alert Defendant Garrow to a "strong likelihood" that Hanner would attempt suicide in the near future.  Instead, he merely restates (almost verbatim) the same assertions as the original complaint, adding only that Defendant Garrow is a "trained officer in suicide prevention [and that] his actions make him liable to any injuries by not acting on preventing suicide" and that Defendant Garrow failed to follow policy for not pulling Hanner from his cell.  (Doc. 38 at 7, ¶¶ 13, 15).  These statements are simply conclusions masked as factual assertions, and they do not correct the identified deficiencies of the original complaint.  Therefore, for the same reasons identified in the Court's earlier order, Defendant Garrow is dismissed from this action because Hanner has not stated a plausible claim against him on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

**B. Hanner has not stated a plausible deliberate indifference claim against Defendant Thompson.[2]**

Hanner asserts that, after he advised Officer Colls of his psychological emergency, he was "pulled" to speak with mental health counselor, Defendant Thompson. (Doc. 35 at 6, ¶¶ 5, 6). Hanner spoke with Defendant Thompson for 20 to 30 minutes. (Id. at 5-6, ¶ 5). He informed Defendant Thompson of his suicidal thoughts and told him that he wanted to kill himself. (Id. ¶ 6). After 20 to 30 minutes, Defendant Thompson left the room. (Id. ¶ 8). Officer Colls then placed Hanner in the shower and took all of his clothing except his boxers. (Id. ¶ 9).

When Hanner raised these same allegations against Defendant Thompson in his original complaint, the Court explained its dismissal of this defendant from this action as follows:

> From Hanner's allegations, it is clear that Defendant Thompson did not ignore Hanner's mental health issues. He spoke with Hanner for 20-30 minutes and then had an officer

---

[2] Hanner is not proceeding *in forma pauperis*, and he is responsible for ensuring that the defendants receive service of process. Nevertheless, in an attempt to expedite this case, the Court directed the United States Marshal Service to attempt service on Defendant Thompson. (Doc. 30). However, the summons was returned unexecuted because Defendant Thompson no longer works for the FDOC. (Doc. 36). Therefore, this defendant remains unserved. Nevertheless, under 28 U.S.C. § 1915A, a court is required to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The reviewing court must dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). Therefore, the Court considers the allegations against Defendant Thompson to determine whether Hanner has stated a cognizable section 1983 claim against him.

remove Hanner from his cell and segregate him in the shower.  Hanner does not allege that Defendant Thompson ordered, or was otherwise responsible for, his placement back into the cell without first searching it for harmful objects.  Nor does Hanner explain why or how Defendant Thompson would have known that there was a "strong likelihood" Hanner would attempt suicide in the near future after their counseling session.  And while the Court could certainly infer a possibility that Defendant Thompson ignored the strong likelihood of Hanner's actions by conduct that was more than merely negligent, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Hanner fares no better on his medical deliberate indifference claim against this defendant.  Notably, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  And courts are reluctant to find deliberate indifference where, as here, medical treatment was actually provided to a prisoner.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) ("It is . . . true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation.")  Even if Defendant Thompson should have recognized the seriousness of Hanner's condition, Hanner has not alleged that he did so, and on the facts alleged in Hanner's complaint, this defendant's failure to provide additional treatment was, at most a matter of medical negligence.

(Doc. 32 at 13–14 (citations to the record omitted)).  Hanner still does not provide the Court with a description of his conversation with Defendant Thompson or otherwise explain why or

how Defendant Thompson would have known that there was a "strong likelihood" Hanner would attempt suicide in the near future after their counseling session. And once again, to the extent Hanner argues that Defendant Thompson should have recognized the seriousness of his mental condition and provided better treatment, he has alleged, at most, negligence, which is not cognizable as a section 1983 claim. Accordingly, the claims against Defendant Thompson are dismissed for failure to state a claim on which relief may be granted. 28 U.S.C 1915A(b)(1).

### C. Hanner has not stated a plausible claim against Defendant Swat.

Hanner alleges only the following against Defendant Swat:

> Sgt Swat enter the wing between 2:00 to 2:30 to conduct a check with a [Lieutenant].

> Sgt. Swat did daily inspection with a [Lieutenant] which I stop him [and] declared a psychological emergency [and] showed him a razor.

> While cell front Sgt. Swat was made aware of a likely to attempt suicide which he recklessly disregarded by walk off.

> Sgt. Swat also is trained in suicidal prevention [and] his failure to act upon Plaintiff emergency or follow policy make him liable to Plaintiff physical injuries.

(Doc. 38 at 7-8). In its Order dismissing Hanner's first complaint, the Court explained how the allegations in the first complaint were insufficient:

> Although a complaint need only contain, "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.

R. Civ. P. 8(a)(2), the scant allegations here do not state a deliberate indifference claim against Defendant Swat.  Hanner provides a chronological timetable of what occurred between 10:25 a.m., when he told Officer Colls of his suicidal thoughts, and 3:00 p.m. when he attempted to cut himself.  However, he does not say when he spoke to Defendant Swat, what he said to him, or what Defendant Swat actually said or did in response.  And while Hanner states that Defendant Swat "did not follow policy or procedures," he does not identify the procedures Defendant Swat allegedly should have followed or alleged any of the elements of a deliberate indifference claim.  Despite making the vague allegation that he alerted this defendant to "suicidal thoughts," the complaint contains no factual allegations from which to draw an inference that Defendant Swat even heard him, much less knew of a "strong likelihood" that Hanner would attempt suicide in the near future.

Therefore, Hanner has alleged only the "sheer possibility" of unlawful activity by Defendant Swat.  Iqbal, 556 U.S. at 678.  But to survive a motion to dismiss, he must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.  Rather, the allegations in Hanner's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation omitted).  Here, Hanner's conclusory allegations are the kind of "naked assertions devoid of further factual enhancement" that are insufficient to avoid dismissal under Iqbal.  Id. (quotations and alteration omitted); see also Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6)).  The claims against Defendant Swat are, therefore, dismissed for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

(Doc. 32 at 9–11 (footnote and citations to the record omitted)). Even after the Court's explanations and admonishment that Hanner needed to provide more than bare allegations in his amended complaint, Hanner still does not allege what he said to Defendant Swat or what Defendant Swat said in response. He does not allege that Defendant Swat was aware of Hanner's earlier counseling session with Defendant Thompson. Nor does he state what policies or procedures Defendant Swat did not follow. While he says that he declared a psychological emergency and showed a razor, he does not describe what he said to Defendant Swat that would have alerted the defendant to a strong likelihood, rather than a mere possibility, that he would attempt suicide. In short, Hanner omits relevant details and asks the Court to deduce the missing facts that could give rise to a deliberate indifference claim. However, these conclusory allegations are insufficient to state a deliberate indifference claim. See Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6)). And while a plaintiff is entitled to all reasonable inferences in a motion to dismiss, the facts alleged in the amended complaint are, once again, the kind of "naked assertions devoid of further factual enhancement" that are insufficient to avoid dismissal under Iqbal. Id. (quotations and alteration omitted). See also Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)

("Conclusory allegations and unwarranted deductions of fact are not admitted as true[.]").  Accordingly, Hanner's claims against Defendant Swat are dismissed for failure to state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

## IV.  Conclusion

The Court finds that the scant facts alleged in Hanner's amended complaint are insufficient to state a plausible claim against any named defendant.  Therefore, the motion to dismiss filed by Defendants Garrow and Swat is granted.  Fed. R. Civ. P. 12(b)(6).  Defendant Thompson is dismissed from this action under 28 U.S.C. § 1915A(b)(1).[3]

The Court explained the pleading deficiencies of Hanner's first complaint in a detailed order.  (Doc. 32).  Hanner did not address those deficiencies, and offered an amended complaint that was substantially identical to the first.  Therefore, no further amendments will be ordered.  See Skyles v. McCoy, 730 F. App'x 769, 771 (11th Cir. 2018) (concluding that where district court gave the plaintiff an opportunity to amend his complaint, but the plaintiff failed to correct the deficiencies in his amended complaint, the court was not obligated to permit the plaintiff a second opportunity to amend).

---

[3] Because the complaint is dismissed in its entirety for failure to state a claim on which relief can be granted, the Court does not address the defendants' argument that they are entitled to qualified immunity.

Accordingly, it is

**ORDERED:**

1.    The motion to dismiss filed by Defendants Swat and Garrow (Doc. 37) is **GRANTED** and the claims against these defendants are **DISMISSED** without prejudice for failure to state a claim on which relief may be granted and without further leave to amend.  Fed. R. Civ. P. 12(b)(6).

2.    The claims against Defendant Thompson are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1) and without further leave to amend.

3.    With no remaining claims or defendants, the Clerk is directed to terminate any pending motions, enter judgment in favor of the defendants, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on May 23, 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA:  FTMP-2
Copies: Timothy Hanner, Counsel of Record